

February 1, 2011

Cynthia Walker
7755 Preservation Drive
Indianapolis, IN 46278

Dear Cynthia:

Due to Tethys' continuing financial challenges, the Company needs to reduce its expenses further. To do so, we regret that we need to implement a second layoff effective today, February 1, 2011. After careful analysis, the Company has decided to eliminate your position in the layoff, and your employment will end on February 2, 2011. This letter describes the separation benefits the Company is offering to you to assist you in your transition to new employment. If you would like to receive separation benefits, please review and sign this Separation Agreement and Release (the "Agreement") and return it as described in paragraph 14.

**1. Separation.** Your last day of work with the Company and your employment termination date will be February 2, 2011 (the "Separation Date").

**2. Accrued Salary and Paid Time Off.** On the Separation Date, the Company will pay you all accrued salary, and all accrued and unused paid time off (PTO), earned through February 2, 2011, subject to standard payroll deductions and withholdings. You are entitled to these payments by law.

**3. Severance Payment.** Although the Company is not obligated to provide severance benefits, if you sign this Agreement, the Company will pay you severance in the form of two (2) weeks salary, plus one (1) week for each full calendar year of service. These payments will be made following the Effective Date (as defined in paragraph 15 below), and will be subject to standard payroll deductions and withholdings.

**4. Health Insurance.** Your group health insurance coverage will continue through February 28, 2011. To the extent provided by the federal COBRA law or, if applicable, state insurance laws, and by the Company's current group health insurance policies, you will be eligible to continue your group health insurance benefits at your own expense beginning March 1, 2011. Later, you may be able to convert to an individual policy through the provider of the Company's health insurance, if you wish. You will be provided with a separate notice describing your rights and obligations under COBRA.

**5. Stock Options.** Under the terms of your stock option agreement and the applicable plan documents, vesting of your stock options will cease as of the Separation Date. Your right to exercise any vested shares, and all other rights and obligations with respect to your stock options(s), are set forth in your stock option agreement, grant notice and applicable plan documents.

**6. Other Compensation or Benefits.** You acknowledge that, except as expressly provided in this Agreement, you will not receive any additional compensation, severance, or benefits after the Separation Date.

**7. Expense Reimbursements.** You agree that, within seven (7) days of the Separation Date, you will submit your final documented expense reimbursement statement reflecting all business expenses you incurred through the Separation Date, if any, for which you seek reimbursement. The Company will reimburse you for these expenses pursuant to its regular business practice.

**8. Cooperation.** You agree that on or before February 2, 2011, you will provide a list of all of the health care providers or other offices with whom you have had contact on behalf of the Company, including but not limited to current clients and potential clients in your territory (collectively "Clients") on Attachment B to this Agreement. The list will provide the name, address, email address, telephone number and location for each Client. You also agree that you will be available at reasonable and mutually agreed times after February 1, 2011 for follow up questions by telephone to assist the Company in the transition of your responsibilities.

**9. Return of Company Property.** By the Separation Date, you agree to return to the Company all Company documents and material (and all copies thereof), and other Company property that you have had in your possession at any time, whether stored electronically or otherwise, including, but not limited to, Company files, notes, lab books, logs, journals, drawings, records, business plans and forecasts, financial information, specifications, computer-recorded information, tangible property including, but not limited to, computers, cell phones, laptops, credit cards, entry cards, identification badges, and keys; and, any materials of any kind that contain or embody any proprietary or confidential information of the Company (and all reproductions thereof). Your timely return of all such Company documents and other property is a condition of your receiving the severance benefits provided under this Agreement.

**10. Proprietary Information Obligations.** You acknowledge your continuing obligations under your Confidential Information and Inventions Agreement.

**11. Confidentiality.** You agree that the provisions of this Agreement will be held in strictest confidence by you and the Company and will not be publicized or disclosed in any manner whatsoever; *provided, however,* that: (a) you may disclose this Agreement in confidence to your immediate family; (b) the parties may disclose this Agreement in confidence to their respective attorneys, accountants, auditors, tax preparers, and financial advisors; (c) the Company may disclose this Agreement as necessary to fulfill standard or legally required corporate reporting or disclosure requirements; and (d) the parties may disclose this Agreement insofar as such disclosure may be necessary to enforce its terms or as otherwise required by law. In particular, and without limitation, you agree not to disclose the terms of this Agreement to any current or former Company employee.

**12. Nondisparagement.** You agree not to disparage the Company, its officers, directors, employees, shareholders, and agents, in any manner likely to be harmful to its or their business, business reputation, or personal reputation; provided that you will respond accurately and fully to any question, inquiry or request for information when required by legal process.

**13. No Admissions.** You understand and agree that the promises and payments in consideration of this Agreement shall not be construed to be an admission of any liability or obligation by the Company to you or to any other person, and that the Company makes no such admission.

**14. Release of Claims.** Except as to claims that cannot be released under applicable law, in exchange for the consideration under this Agreement to which you would not otherwise be entitled, you hereby generally and completely release the Company and its directors, officers, employees, shareholders, partners, agents, attorneys, predecessors, successors, parent and subsidiary entities, insurers, affiliates, and assigns from any and all claims, liabilities and obligations, both known and unknown, that arise out of or are in any way related to events, acts, conduct, or omissions occurring at any time prior to and including the date you sign this Agreement. This general release includes, but is not limited to: (a) all claims arising out of or in any way related to your employment with the Company or the termination of employment; (b) all claims related to your compensation or benefits from the Company, including salary, bonuses, commissions, vacation pay, expense reimbursements, severance pay, fringe benefits, stock, stock options, or any other ownership interests in the Company; (c) all claims for breach of contract, wrongful termination, and breach of the implied covenant of good faith and fair dealing; (d) all tort claims, including but not limited to claims for fraud, defamation, emotional distress, and discharge in violation of public policy; and (e) all federal, state, and local statutory claims, including claims for discrimination, harassment, retaliation, attorneys' fees, or other claims arising under the federal Civil Rights Act of 1964 (as amended), the federal Americans with Disabilities Act of 1990, the federal Age Discrimination in Employment Act of 1967, as amended ("ADEA"), and the California Fair Employment and Housing Act, or any anti-discrimination law of any other state, or jurisdiction.

**15. ADEA Waiver.** You acknowledge that on February 1, 2011, you were given forty-five (45) days to consider and review this Agreement. Except as to claims that cannot be released under applicable law, you acknowledge that you are knowingly and voluntarily waiving and releasing any rights you may have under the ADEA ("ADEA Waiver"). You also acknowledge that the consideration given for the ADEA Waiver is in addition to anything of value to which you were already entitled. You further acknowledge that you have been advised by this writing, as required by the ADEA, that: (a) your ADEA Waiver does not apply to any rights or claims that arise after the date you sign this Agreement; (b) you should consult with an attorney prior to signing this Agreement; (c) you have forty-five (45) days to consider this Agreement (although you may choose to voluntarily sign it sooner); (d) you have seven (7) days following the date you sign and return this Agreement to revoke the ADEA Waiver (in a written revocation delivered to Judith Forrest by 5:00 pm (EST) on the seventh day of the revocation period); and (e) the ADEA Waiver will not be effective until the date upon which the revocation period has expired, which will be the eighth day after you sign this Agreement (the "Effective Date"). Nevertheless, your general release of claims, except for the ADEA Waiver, is effective immediately and not revocable.

**16. OWBPA Notice.** You acknowledge that the Company has provided you with a as Disclosure Form for Group Terminations under the Older Workers' Benefit Protection Act as Attachment A hereto. The class unit or group of individuals includes all employees in the

Company. All employees whose employment is being terminated as part of this layoff are eligible for the separation benefit program.

**17. Section 1542 Waiver.** In granting the release herein, which includes claims which may be unknown to you at present, you acknowledge that you have read and understand Section 1542 of the California Civil Code: **"A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."** You hereby expressly waive and relinquish all rights and benefits under this section and any law or legal principle of similar effect in any jurisdiction with respect to the releases granted herein, including but not limited to the release of unknown and unsuspected claims granted in this Agreement.

**18. Miscellaneous.** This Agreement, including Attachment A, constitutes the complete, final and exclusive embodiment of the entire agreement between you and the Company with regard to its subject matter. It is entered into without reliance on any promise or representation, written or oral, other than those expressly contained herein, and it supersedes any other such promises, warranties or representations. This Agreement may not be modified or amended except in a writing signed by both you and the Chief Executive Officer of the Company. This Agreement will bind the heirs, personal representatives, successors and assigns of both you and the Company, and inure to the benefit of you and the Company, their heirs, successors and assigns. If any provision of this Agreement is determined to be invalid or unenforceable, in whole or in part, this determination will not affect any other provision of this Agreement and the provision in question will be modified so as to be rendered enforceable. This Agreement will be deemed to have been entered into and will be construed and enforced in accordance with the laws of the State of California as applied to contracts made and to be performed entirely within California, without giving effect to California's principles of conflict of laws. Any ambiguity in this Agreement shall not be construed against either party as the drafter. Any waiver of a breach of this Agreement shall be in writing and shall not be deemed to be a waiver of any successive breach. This Agreement may be executed in counterparts and facsimile signatures will suffice as original signatures.

If this Agreement is acceptable to you, please sign below and return the original to Judith Forrest in the envelope enclosed.

We wish you the best in your future endeavors.

Sincerely,

TETHYS BIOSCIENCE, INC.

By: _____
**Judith Forrest**
**Vice President of Human Resources and Organizational Development**

4

I HAVE READ, UNDERSTAND AND AGREE FULLY TO THE FOREGOING AGREEMENT:

_Cynthia Walker_
Cynthia Walker

Date: 03-10-2011