```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                        AT BLUEFIELD
```

**TIM BROWN, et al.,**

    **Plaintiffs,**

**v.**                              CIVIL ACTION NO. 1:10-1245

**TETHYS BIOSCIENCE, INC.,**

    **Defendant.**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Pending before the court is defendant Tethys Bioscience Inc.'s ("Tethys") motion to dismiss plaintiff Cynthia Walker's second amended complaint. (Doc. No. 122). For reasons expressed more fully below, the motion to dismiss is hereby converted to a motion for summary judgment under Federal Rule of Civil Procedure 56 and is hereby **GRANTED**.

<u>**I.  Background**</u>

This case arises out of the circumstances leading to and surrounding the former employment of Walker and her fellow plaintiffs with defendant Tethys. According to the Complaint, Tethys, a Delaware corporation with its principal place of business in California, "discovers, develops, and commercializes tests that use biomarkers to identify whether an individual is at risk for chronic metabolic diseases such as diabetes." Second Amended Complaint ¶¶ 6, 8. The "PreDX Diabetes Risk Test," a

Tethys product, allegedly assesses an individual's risk of developing Type 2 diabetes within five years. Id. at ¶ 9.

Plaintiffs allege they were recruited and hired by Tethys to market and sell its PreDX Diabetes Risk Test to health care providers in West Virginia and throughout the United States. Id. at ¶¶ 10-14. As part of the hiring process, plaintiffs claim they were told that Tethys had contracts and agreements in place with medical laboratories and HMO organizations to pay for the Diabetes Risk Test. Id. at ¶¶ 18, 20. After accepting employment, plaintiffs aver they discovered that Tethys did not have such contracts and, without such contracts, they were unable to meet their sales goals. Id. at ¶¶ 23, 24. According to plaintiffs, Tethys told them to use improper means to secure sales of the Diabetes Risk Test. Id. at ¶ 25. When plaintiffs refused to engage in the alleged improper sales methods and were unable to meet sales goals, they were allegedly terminated from employment or forced to resign. Id. at ¶ 28.

On or about September 23, 2010, Tim Brown, Richard Hidalgo, Valerie Honaker, Michael Lillie, and Bonnie Weiss (collectively "Plaintiffs"), filed the instant action against Tethys in the Circuit Court of Mercer County. On October 21, 2010, Tethys removed the case to this court on the basis of diversity jurisdiction. On March 30, 2012, the court granted plaintiffs' second motion to amend which sought to add Cynthia

Walker, a resident of Indiana, as a plaintiff and assert additional claims for negligence and negligent misrepresentation.

On April 27, 2012, Tethys filed the instant motion to dismiss the complaint as to Walker.  On May 9, 2012, prior to filing a response to Tethys' motion to dismiss, Walker's attorneys filed a motion to withdraw as counsel.  On June 4, 2012, the court granted the motion to withdraw as counsel for Ms. Walker filed by M. Hudson McClanahan and Arthur J. Park.  The court also stayed the dates in the scheduling order to allow Ms. Walker time to secure new counsel, giving her 30 days to do so.  The court further granted two motions by Ms. Walker seeking additional time to find counsel and gave her a firm deadline of "September 10, 2012, to obtain new counsel to represent her in this matter or to indicate to the court whether she wishes to proceed pro se."  Order of August 31, 2012, (Doc. No. 151).

By Memorandum Opinion and Order dated September 19, 2012, the court notified the parties that it was considering converting the motion to dismiss to one for summary judgment given that Tethys' motion asked the court to consider matters outside the pleadings.  Ms. Walker was given until October 3, 2012, to file a response to the motion.  To date, no response has been filed on Walker's behalf and the motion is ripe for the court's review.  Furthermore, new counsel has not entered an appearance on behalf

of Ms. Walker nor has she indicated that she intends to proceed pro se.

Plaintiffs' Second Amended Complaint contains four claims relevant to Walker: Actual and/or Constructive Fraud (Count I), Negligent Misrepresentation (Count II), Negligent Supervision and/or Training (Count III), and Retaliatory Discharge (Count VIII). The instant motion seeks judgment in Tethys' favor on all the claims asserted by Walker on the grounds that she released these claims when she signed a separation agreement and release and accepted a severance payment from Tethys.

By letter dated February 1, 2011, Tethys informed Walker that, due to Tethys' "current financial circumstances," it had decided to "restructure operations, downsize [its] workforce, and reorganize the Company." Exhibit B to Tethys' Motion. As part of this downsizing, Walker was further informed that her position with the company was being eliminated effective February 2, 2011. See id. The letter indicated that Walker was being offered "a separation package" and that, to receive the offered benefits, she needed to sign "the attached separation agreement." Id. The letter also advised Walker to "read the attached separation agreement carefully." Id.

Pursuant to the terms of the Separation Agreement and Release ("Agreement"), Tethys agreed to pay Walker "severance in the form of two (2) weeks salary, plus one (1) week for each

calendar year of service" if she signed the Agreement. Exhibit A to Tethys' Motion. Paragraph No. 14 of the Agreement contained the following release:

> Except as to claims that cannot be released under applicable law, in exchange for the consideration under this Agreement to which you would not otherwise be entitled, you hereby generally and completely release the Company and its directors, officers, employees, shareholders, partners, agents, attorneys, predecessors, successors, parent and subsidiary entities, insurers, affiliates, and assigns from any and all claims, liabilities and obligations, both known and unknown, that arise out of or are in any way related to events, acts, conduct, or omissions occurring at any time prior to and including the date you sign this Agreement. This general release includes, but is not limited to: (a) all claims arising out of or in any way related to your employment with the Company or the termination of employment; (b) all claims related to your compensation or benefits from the Company, including salary, bonuses, commissions, vacation pay, expense reimbursements, severance pay, fringe benefits, stock, stock options, or any other ownership interests in the Company; (c) all claims for breach of contract, wrongful termination, and breach of the implied covenant of good faith and fair dealing; (d) all tort claims, including but not limited to claims for fraud, defamation, emotional distress, and discharge in violation of public policy; and (e) all federal, state, and local statutory claims, including claims for discrimination, harassment, retaliation, attorneys' fees, or other claims arising under the federal Civil Rights Act of 1964 (as amended), the federal Americans with Disabilities Act of 1990, the federal Age Discrimination in Employment Act of 1967, as amended ("ADEA"), and the California Fair Employment and Housing Act, or any anti-discrimination law of any other state, or jurisdiction.

Id. at p. 3. The Agreement also waived the protections of California Civil Code § 1542.[1] Id. at p.4. Finally, the Agreement indicated that it "will be deemed to have been entered into and will be construed and enforced in accordance with the laws of the State of California as applied to contracts made and to be performed entirely within California." Id. at p. 4. Walker signed the Agreement on March 10, 2011, indicating that she had read, understood, and agreed fully to it. See id. at p. 5.

### Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The moving party has the burden of establishing that there is no genuine issue as to any material fact. Celotex Corp. v. Catrett,

---

[1] California Civil Code Section 1542 provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor." However, "[i]t is well established that a general release which explicitly covers unknown claims and specifically waives the provisions of Civil Code section 1542 is completely enforceable and acts as a complete bar to all claims (known or unknown at the time of the release) despite protestations by one of the parties that he or she did not intend to release certain types of claims." Elder v. Thomas, No. B194946, 2008 WL 962907, *9 (Cal. App. 2 Dist. Apr. 10, 2008) (internal quotations and alterations omitted).

6

477 U.S. 317, 323 (1986).  This burden can be met by showing that the nonmoving party has failed to prove an essential element of the nonmoving party's case for which the nonmoving party will bear the burden of proof at trial.  Id. at 322.  If the moving party meets this burden, according to the United States Supreme Court, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

Once the moving party has met this burden, the burden shifts to the nonmoving party to produce sufficient evidence for a jury to return a verdict for that party.

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.  The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find, by a preponderance of the evidence, that the plaintiff is entitled to a verdict . . . .

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 250-51.

## Analysis

The Agreement indicates, and defendant agrees, that California law applies to the interpretation of the Agreement.  "California law strongly favors the settlement of disputes and

the enforcement of releases." Jimenez v. JP Morgan Chase & Co., No. 08-CV-0152 W(WMC), 2008 WL 2036896, *3 (S.D. Cal. May 8, 2008). "A settlement agreement is treated as any other contract for purposes of interpretation." United Commercial Ins. Serv., Inc. v. Paymaster Corp., 962 F.2d 853, 856 (9th Cir. 1992).

> Under California law, the intent of the parties determines the meaning of the contract. Cal. Civil Code §§ 1636, 1638. The relevant intent is "objective"-that is, the intent manifested in the agreement and by surrounding conduct-rather than the subjective beliefs of the parties. Lawyer's Title Ins. Co. v. U.S. Fidelity & Guar. Co., 122 F.R.D. 567, 569 (N.D. Cal. 1988); Beck v. American Health Group Int'l, 211 Cal. App. 3d 1555, 260 Cal. Rptr. 237, 242 (1989). For this reason, the true intent of a party is irrelevant if it is unexpressed. Union Bank v. Winnebago Indus., 528 F.2d 95, 99 (9th Cir. 1975); Mill Valley v. Transamerica Ins. Co., 98 Cal. App. 3d 595, 159 Cal. Rptr. 635, 639 (1979).

Id.

"The term all claims includes claims that are not expressly enumerated in the release." Villacres v. ABM Indus. Inc., 189 Cal. App. 4th 562, 587, 117 Cal. Rptr. 3d 398, 418 (Cal. App. 2 Dist., Oct. 22, 2010) (internal citations and quotations omitted). As the Villacres court went on to say:

> [T]he release of all claims and causes of action must be given a comprehensive scope. If courts did not follow this rule, it [would be] virtually impossible to create a general release that . . . actually achieve[d] its literal purpose . . ., and language releasing all claims would be inherently misleading, causing unfair surprise to parties that offer payment on the reasonable expectation that all claims are settled, only later to face continuing litigation. . . .

> Moreover, if courts did not enforce general releases, an employer . . . seeking a comprehensive settlement, would have to struggle to enumerate all claims the employee might plan to allege. The employer would never be able to know for sure that it had thought of every claim, and therefore it would never be able to put a definitive end to the matter. Employers would then be disinclined to enter into settlements, because certainty as to the full extent of liability is one factor that motivates employers to choose settlement over litigation.

<u>Villacres</u>, 117 Cal. Rptr. 3d at 420 (internal citations and quotations omitted).

      The release of claims contained in the Agreement at issue is very broad. It "generally and completely release[s]" Tethys "from any and all claims, liabilities and obligations, both known and unknown, that arise out of or are in any way related to events, acts, conduct, or omissions occurring at any time prior to and including the date you sign this Agreement." Exhibit A to Tethys' Motion to Dismiss. It also releases Tethys from "all claims arising out of or in any way related to [Walker's] employment with the Company or the termination of employment," as well as "all tort claims, including but not limited to claims for fraud, defamation, emotional distress, and discharge in violation of public policy." <u>Id.</u> Therefore, the release at issue clearly encompasses the various claims that Walker asserts in this lawsuit and, therefore, those claims are barred by the release.

9

### Conclusion

Based on the foregoing, defendant's motion for summary judgment as to Cynthia Walker is **GRANTED**. Furthermore, Walker's first and second motions to extend time for filing discovery responses and responding to Tethys' motion to dismiss (Docs. No. 126 and 128) are **DENIED** as moot.

The Clerk is directed to send copies of this Memorandum Opinion and Order to all counsel of record and to Ms. Walker via certified mail, return receipt requested.

It is SO ORDERED this 3rd day of January, 2013.

ENTER:

David A. Faber
Senior United States District Judge